FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2010 AUG 31  P 12: 51

CLERK'S OFFICE
AT GREENBELT

BY ____K____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| THE EQUAL RIGHTS CENTER<br>a not-for-profit corporation,<br>11 Dupont Circle, NW, Suite 400<br>Washington, DC 20036,<br><br>      Plaintiff,<br>vs.<br><br>LERNER ENTERPRISES<br>LERNER CORPORATION<br>FIRST ALLIANCE PROPERTIES LLC<br>2000 Tower Oaks Boulevard, 8th Floor<br>Rockville, MD 20852<br><br>      Defendants. | Civil Action No. _DKC 10 CV 2400_<br><br>Hon. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF, AND FOR DAMAGES**

    1.    Plaintiff, the Equal Rights Center (the "ERC"), for its Complaint against Lerner Enterprises, Lerner Corporation, and First Alliance Properties LLC (collectively "Defendants" or "LERNER"), alleges and states as follows:

    2.    This action is brought by the ERC, by and through its counsel, under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619 (collectively the "Fair Housing Act" or "FHA"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.* (collectively the "ADA") to enjoin and remedy ongoing and systematic violations of these civil rights laws by LERNER in the design, construction, control, management and/or operation of covered multifamily dwellings, including residential complexes in Virginia. The ERC seeks to redress

8000/001/1313909.1
8000/001/1313909.2

the civil rights violations at properties the Defendant has designed, constructed, controlled, managed and/or owned. LERNER's actions have excluded, and continue to exclude, persons with disabilities from access to LERNER properties.

3. Pursuant to the FHA, every multifamily housing building containing four (4) or more units built for first occupancy after March 13, 1991, is subject to the design and construction requirements of the FHA ("covered multifamily dwellings"). The FHA requires all ground floor units, and all units on any floor serviced by an elevator in a covered multifamily dwelling ("covered units"), as well as "public use and common use areas" associated with covered units, to contain certain features of minimum accessibility and adaptable design, including, among other things:

    a. an accessible building entrance on an accessible route;

    b. public-use and common-use areas that are readily accessible to, and usable by, individuals with disabilities;

    c. an accessible route into and through the dwelling;

    d. useable doors;

    e. light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

    f. reinforcements in bathroom walls that allow for the later installation of grab-bars; and

    g. usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

4. Pursuant to the ADA, public use facilities, such as rental and leasing offices at apartment complexes, parking lots, sidewalks and restrooms, built for first use after January 26, 1993, are subject to accessibility requirements that enable the full and equal enjoyment of the services, facilities, privileges and accommodations of a place of public accommodation by persons with disabilities, including:

    a. routes from public transportation stops, accessible parking, and public streets or sidewalks to buildings readily accessible to, and usable by, individuals with disabilities;

    b. a minimum number of accessible parking spaces located adjacent to an accessible entrance;

    c. the following, non-exclusive, features of accessible design:

        1) curb ramps accessible to persons in wheelchairs;

        2) entrances to public use facilities wide enough to allow passage of individuals who use wheelchairs; and

        3) usable bathrooms such that an individual in a wheelchair can maneuver about the space.

5. The United States Congress has made clear that enforcement of these civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers who fail to construct dwellings and public accommodations accessible and adaptable to people with disabilities. *See* U.S. House of Rep. Report on the FHAA, H.R. Rep. No. 100-711 (1988). Congress declared

that such barriers, even if not the product of invidious intent, "can be just as devastating as intentional discrimination." H.R. Rep. No. 100-711 at 25 (1988).

6. As described herein, LERNER has engaged in a continuous pattern and practice of discrimination against persons with disabilities in violation of both the FHA and the ADA by designing, constructing, managing, owning and/or operating covered multifamily dwellings and the common use and public use areas associated with those covered dwellings in such a manner as to deny persons with disabilities access to, and the use of, these facilities as required under these federal civil rights laws.

## PARTIES

7. The ERC is a non-profit corporation organized under the laws of the District of Columbia with its principal place of business at 11 Dupont Circle, N.W., Suite 400, Washington, D.C., 20036. The ERC was founded in 1983, by a group of inter-denominational clergy and community leaders to provide a multifaceted approach to civil rights issues, and to create an open society where equal opportunity for all is assured. The ERC seeks to advance its mission through counseling, education, outreach, advocacy, and enforcement..

8. Lerner Enterprises is a Maryland corporation with its principle executive offices located at 2000 Tower Oaks Boulevard, 8th Floor, Rockville, MD 20852. On information and belief, Lerner Enterprises is engaged in the ownership, development, construction and management of multifamily apartment communities in Maryland, Virginia, and the District of Columbia. Lerner Enterprises maintains a publicly accessible website at http://www.lernerenterprises.com.

9. Lerner Corporation is a Maryland corporation with its principle executive offices located at 2000 Tower Oaks Boulevard, 8th Floor, Rockville, MD 20852. On information and belief, Lerner Corporation is engaged in the ownership, development, construction and/or management of multifamily apartment communities in Maryland, Virginia, and the District of Columbia. Lerner Enterprises maintains a publicly accessible website at http://www.lernercorporation.com.

10. First Alliance Properties, LLC is a Maryland corporation with its principle executive offices located at 2000 Tower Oaks Boulevard, 8th Floor, Rockville, MD 20852. On information and belief, First Alliance Properties, LLC is engaged in the ownership, development, construction and/or management of multifamily apartment communities in Maryland, Virginia, and/or the District of Columbia.

11. Through design, construction, control, management, and/or ownership, LERNER has been and/or is involved in the design and construction of numerous covered multifamily housing complexes in Maryland, Virginia, and the District of Columbia. LERNER publicly represents that it is associated with each of these covered multifamily housing complexes. The ERC has identified, through on-site inspection, LERNER publications, or other public records, LERNER housing units and complexes that are subject to the FHA and the ADA. For purposes of this Complaint, all LERNER properties subject to the FHA and the ADA are referred to as the "Subject Properties." Attached at Addendum A to this Complaint is a list of Subject Properties identified to date.

12. As a result of LERNER's unlawful conduct complained of herein, the ERC has been damaged by the frustration of its overall mission, as described herein, and by having to

divert its scarce resources that the ERC would have otherwise used to provide counseling, outreach, education and referral services. Instead, the ERC has devoted substantial resources to identifying, researching, investigating and counteracting LERNER's discriminatory policies and practices.

## JURISDICTION AND VENUE

13. This Court may exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 2201, and 42 U.S.C. §§ 3613(a) and 12188. Further, this Court may exercise personal jurisdiction over the Defendants.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all of the Defendants reside in this State. Venue also is proper because some of the events and omissions giving rise to the claims herein occurred in this District.

## FACTUAL AND LEGAL BACKGROUND

15. The ERC became aware that a large number of new multifamily housing complexes were being constructed in Maryland, Virginia, and the greater Washington, D.C. area that did not include the federally required elements of accessible design. The ERC visited several LERNER properties and discovered FHA and ADA violations in the design and construction of each of those properties.

16. In 2008 and 2009, the ERC sent accessibility testers to each of the Subject Properties it has identified to date.

17. The Subject Properties are subject to the prohibitions on discrimination set forth in 42 U.S.C. §§ 3604(f)(1)-(3) of the FHA because the properties include "covered multifamily

dwellings" within the meaning of the FHA, 42 U.S.C. § 3604(f)(7), and were built for first occupancy after March 13, 1991.

18. Similarly, all of the Subject Properties were constructed for first occupancy or remodeled after January 26, 1993, and are subject to the prohibition on discrimination in 42 U.S.C. §12182 of the ADA, and to the accessibility requirements of 42 U.S.C. § 12183 of the ADA and the applicable regulations. Each Subject Property has rental and leasing offices, and facilities and accommodations appurtenant to the offices, including parking, sidewalks, and restrooms which constitute "public accommodations" within the meaning of the ADA, 42 U.S.C. § 12181(7).

19. The ERC identified at least one FHA or ADA violation, and in most cases multiple violations, at each of the Subject Properties. The frequency and similarity of these violations demonstrates that LERNER has engaged in a pervasive pattern and practice of designing, constructing, controlling, managing and/or owning apartment properties in violation of FHA and ADA accessibility design requirements. The ERC anticipates that further investigation and discovery will identify additional FHA and ADA violations at the Subject Properties.

20. By way of example, covered dwelling units in the Subject Properties subject to FHA design and construction requirements exhibited, with varying frequency by complex, the following violations:

    a. bathrooms that do not have sufficient clear floor space so as to allow a person in a wheelchair to maneuver about the space;

  b.  thermostats, environmental control, and building access features that are not located in accessible locations;

  c.  walk-in closet doors that are too narrow to allow passage by a person in a wheelchair or persons using other mobility aids; and

  d.  thresholds that act as barriers to persons in wheelchairs or persons using other mobility aids.

21. Many of the Subject Properties also violate ADA accessibility requirements because the common areas used by residents were not designed and constructed in such manner that they are readily accessible to, and usable by, persons with disabilities. By way of example, some of the violations in the common areas of the Subject Properties include the following:

  a.  bathrooms available to the public that do not have sufficient clear floor space to allow a person in a wheelchair to maneuver about the space;

  b.  outdoor grilling stations located on raised concrete slabs surrounded by grass that are not accessible by persons in wheelchairs or persons using other mobility aids; and

  c.  ramps that are too steep.

22. The following specific examples are illustrative of LERNER's pattern and practice of FHA and ADA violations:

### Remington at Dulles Town Center

23. LERNER'S Remington at Dulles Town Center property in Dulles, Virginia (the "Remington" property) is a covered multifamily housing complex that consists of 405 units, and was completed after March 13, 1991. The ERC observed the following violations at Remington at Dulles Town Center:

   a. outdoor grilling stations located on raised concrete slabs in grassy areas with no accessible route to them;

   b. bathrooms in the common area do not have sufficient clear floor space to allow a person in a wheelchair to maneuver about the space;

   c. bathrooms in the units have thresholds that impede use by a person in a wheelchair or persons using other mobility aids;

   d. a buzzer security panel that is too high for use by a person in a wheelchair; and

   e. environmental controls in units are too high for use by a person in a wheelchair.

### The Falls at Flint Hill

24. LERNER'S The Falls at Flint Hill property in Oakton, Virginia is a covered multifamily housing complex that consists of 432 units, and was completed after March 13, 1991. The ERC observed the following violations at The Falls at Flint Hill:

   a. the lack of an accessible route into the first-floor club room;

   b. a second floor hallway ramp with excessive slope;

      c.      bathrooms in the common area that do not have sufficient clear floor space to allow a person in a wheelchair to maneuver about the space; and

      d.      bathrooms in the units that do not have sufficient clear floor space to allow a person in a wheelchair to maneuver about the space.

### Parc Dulles at Dulles Town Center

25.    LERNER's Parc Dulles at Dulles Town Center in Dulles, Virginia is a covered multifamily housing complex that consists of 397 units, and was completed after March 13, 1991. The ERC observed that at Parc Dulles at Dulles Town Center, doors to walk-in closets are too narrow, precluding use by a person in a wheelchair.

### Pattern and Practice Among Subject Properties

26.    Upon information and belief, LERNER participated in the design, construction, control, management, and/or ownership of each of the Subject Properties. Moreover, these properties were designed and constructed seriatim by LERNER.

27.    On information and belief, the Subject Properties share relevant common elements of design, demonstrating a pattern and practice of common design and construction. Floor plans published by LERNER demonstrate commonality at least among bathrooms and kitchen designs, and possibly among other design elements among the Subject Properties.

28.    LERNER's violations are ongoing and demonstrate a pervasive pattern and practice of systematic and continuous FHA and ADA violations over several years. LERNER has repeatedly and continually failed to design and construct covered multifamily dwellings, including their public and common use areas, in accordance with the requirements of 42 U.S.C. § 3604(f)(3)(C), 42 U.S.C. § 12183(a)(1), and the applicable regulations.

29. At least one of the Subject Properties that constitute part of LERNER's pattern and practice of designing and constructing inaccessible multifamily dwellings have been completed within two years of the filing of this Complaint.

30. In carrying out the aforementioned actions, LERNER acted intentionally and willfully, and with callous and reckless disregard of the FHA and ADA, as well as the rights of persons with disabilities to accessible housing.

## INJURY TO PLAINTIFF

31. As a result of LERNER's actions described above, the ERC has been directly and substantially injured in that it has been frustrated in its mission to promote equal opportunities in housing and in carrying out the programs and services that it provides, including encouraging integrated living patterns, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing counseling services to persons either looking for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices.

32. LERNER's continuing discriminatory practices also have forced the ERC to divert significant and scarce financial and organizational resources to identify, research, investigate, and counteract LERNER's discriminatory practices, and such practices have frustrated the ERC's efforts against discrimination—such as the ERC's efforts and programs to provide counseling, outreach, educational, and referral services—thereby causing the ERC to suffer a concrete and demonstrable injury.

33. In addition to and independent of the injuries stated above the ERC's individual members, many of whom are disabled persons living within the proximity of one or more

Subject Properties, have been damaged as a result of LERNER's wrongful conduct complained of herein.

34. Until remedied, LERNER's unlawful, discriminatory actions will continue to injure the ERC by, *inter alia*:

    a. Interfering with efforts and programs to promote equal opportunity in housing;

    b. requiring the commitment of scarce ERC resources, including substantial staff time and funding, to investigate and counteract LERNER's discriminatory conduct, thus diverting those resources from the ERC's educational, outreach, and counseling activities and services;

    c. frustrating its mission and purpose of promoting the equal availability of housing to all persons without regard to their membership in any protected category, including disability; and

    d. injuring the rights and interests of the ERC's individual members who have disabilities by making the Subject Properties unavailable to them.

## FIRST CLAIM FOR RELIEF
### (FHA Violations)

35. Plaintiff adopts and realleges the allegations in paragraphs 1-34.

36. The Subject Properties are comprised of at least three (3) apartment complexes, and contain more than 1,200 individual housing units.

37. Each of the Subject Properties is a covered multifamily dwelling subject to the FHA. At the Subject Properties, each of the ground-floor units in all buildings, and all units in

buildings on floors serviced by an elevator, is a "covered unit" within the meaning of the FHA. Each "covered unit" at the Subject Properties, and the public and common use areas at the Subject Properties, is subject to the design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(C).

38. The ERC tested all three Subject Properties and found violations of the FHA, 42 U.S.C. § 3604(f)(3)(C) at every property.

39. On information and belief, based on the violations identified at the Subject Properties, LERNER repeatedly and continually has failed to design and construct the Subject Properties so that, among other things:

    a. public-use and common-use areas are readily accessible to, and usable by, individuals with disabilities;

    b. covered units contain the following features of adaptive design:

        1) an accessible route into and through the dwelling;

        2) usable bathrooms such that an individual in a wheelchair can maneuver about the space; and

        3) light switches, electrical outlets, thermostats and other environmental controls in accessible locations.

40. Through its design, construction, control, management, and/or ownership of the Subject Properties, LERNER has:

    a. discriminated in the sale or rental of, otherwise made unavailable, or denied dwellings to persons because of their disabilities in violation of the FHA, 42 U.S.C. § 3604(f)(1);

      b.      discriminated against persons because of their disabilities in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of the FHA, 42 U.S.C. § 3604(f)(2); and

      c.      failed to design and construct dwellings in compliance with the requirements mandated by the FHA, 42 U.S.C. § 3604(f)(3), and the applicable regulations.

41. The actions complained of constitute a continuing pattern and practice of repeated and continuing FHA violations in that LERNER has engaged in a systematic and consistent discriminatory pattern and practice of designing and constructing covered multifamily dwellings in violation of FHA requirements.

42. LERNER's conduct has been intentional, willful and taken in disregard for the rights of others.

43. As a result of LERNER's unlawful conduct, the ERC, both in its own right, and as a representative of its individual members with disabilities, has been injured by a discriminatory housing practice and is, therefore, an "aggrieved person," as defined by the FHA, 42 U.S.C. 3602(i)(1).

44. On information and belief, based on its past and ongoing practices, LERNER is continuing with its practices of designing and constructing covered multifamily dwellings and common-use and public-use areas that are in violation of the FHA. Pursuant to Section 3613(c) of the FHA, the ERC is entitled to temporary and permanent injunctive relief, enjoining LERNER, its officers, directors, employees, agents, successors, assigns, and all other persons in

active concert or participation with any of them, from constructing-- including the acquisition of any building or construction permits, or certificates of occupancy – any covered multifamily housing and common areas that fail to fully comply with the FHA and the applicable regulations.

## SECOND CLAIM FOR RELIEF
### (ADA Violations)

45. Plaintiff adopts and realleges the allegations in paragraphs 1-44.

46. The rental and leasing offices at the Subject Properties, and the features and accommodations appurtenant to these offices, are sales or rental establishments, the operations of which affect commerce, and are "public accommodations" as defined by 42 U.S.C. § 12181(7).

47. The rental and leasing offices, and the facilities and accommodations appurtenant to the public use of the rental offices, including the parking, sidewalks, and restrooms at the offices of the Subject properties designed and constructed for first use after January 26, 1993, are subject to the prohibition on discrimination contained in 42 U.S.C. § 12182(a), and are subject to the design and construction requirements of 42 U.S.C. § 12183(a).

48. The ERC tested the Subject Properties and found ADA violations.

49. On information and belief, based on the results from the Subject Properties, LERNER has failed to design and construct certain Subject Properties' rental and leasing offices, and the appurtenant parking, sidewalks, and restrooms at those offices, in such a manner that the facilities are readily accessible to ,and usable by, individuals with disabilities.

50. The actions of LERNER, as described herein, constitute:

a. discrimination against individuals with disabilities in the full and equal enjoyment of the services, facilities, privileges and accommodations of a place of public accommodation, in violation of the ADA, 42 U.S.C. § 12182(a); and

b. failure to design and construct or remodel public accommodations in compliance with the requirements of the ADA, 42 U.S.C. § 12183(a), and the applicable regulations.

51. The actions complained of constitute a pattern and practice of repeated and continuing violations of the ADA in that LERNER has engaged in a systematic and consistent discriminatory practice of designing, constructing, owning, operating or managing the rental offices and the appurtenant parking, sidewalks and restrooms at those rental offices in violation of the requirements of the ADA, and the applicable regulations.

52. The actions of LERNER complained of here have the effect of denying the ERC's individual public members with disabilities, as well as that segment of the general public with disabilities, access to the rental offices and the appurtenant parking, sidewalks and restrooms at those rental offices at the Subject Properties.

53. The ERC, both in its own right and as a representative of its individual public members with disabilities, is an "aggrieved person" and this Court is entitled to grant such relief it considers appropriate pursuant to 42 U.S.C. § 12188, including temporary and permanent injunctive relief and damages, as a result of LERNER's wrongful conduct.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the Equal Rights Center, respectively prays that this Court grant it judgment in its favor, and against LERNER as follows:

A. Declaring that LERNER's practices and actions, as alleged herein, violate the FHA, the ADA, and the applicable regulations;

B. Enjoining LERNER, its officers, directors, employees, agents, successors, assigns, and all other persons in active concert or participation with any of them, both temporarily during the pendency of this action, and permanently from:

1. constructing, including the acquisition of any building or construction permits, or certificates of occupancy, any covered multifamily housing and/or common areas that, in any way, fail to comply with the FHA, the ADA, and the applicable regulations;

2. selling any apartment complex containing a covered unit, or any individual covered dwelling unit, until the entry of final relief herein, or until the completion of such retro-fit alteration to covered units as may be ordered by the Court;

3. failing or refusing to bring the covered dwelling units and the public use and common use areas at the Subject Properties into immediate compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations;

        4.        failing or refusing to bring the public use and common use areas at the Subject Properties into immediate compliance with the requirements of 42 U.S.C. §§ 12182-83, and the applicable regulations; and

        5.        failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with the FHA, the ADA, and the applicable regulations.

C.    Awarding such damages as would fully compensate the ERC for the injuries incurred as a result of LERNER's discriminatory housing practices and conduct;

D.    Awarding such punitive damages as against LERNER as are proper under the law;

E.    Awarding the ERC its costs and attorneys' fees incurred herein; and

F.    Awarding the ERC such other relief as this Court deems just and proper.

Dated this 31st day of August, 2010

Respectfully Submitted,

/s/

Jerome C. Randolph (Md. Bar # 28592)
Derek Y. Sugimura (Md. Bar # 28600)
W. Hunter Winstead (Md. Bar # 28603)
Gilbert LLP
1100 New York, Avenue, NW
Washington, D.C. 20005
Tel: (202) 772-2200
Fax: (202) 772-3333

and

Robert M. Bruskin (Md. Bar #17479)
Washington Lawyers' Committee
For Civil Rights and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, D.C. 20036
Tel: (202) 319-1000
Fax: (202) 319-1010

Attorneys for Plaintiff