**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**THE EQUAL RIGHTS CENTER**
a not-for-profit organization,
11 Dupont Circle, NW, Suite 400
Washington, DC 20036

Plaintiff,

vs.

**LERNER ENTERPRISES**
**LERNER CORPORATION**
**FIRST ALLIANCE PROPERTIES, LLC**
**DTC APARTMENTS WEST, LLC**
**DTC APARTMENTS SOUTH, LLC**
**FLINT HILL DEVELOPMENT COMPANY, LLC**
2000 Tower Oaks Boulevard, 8th Floor
Rockville, MD 20852

Defendants.

**Civil Action No. 8:10-cv-2400-DKC**
**Hon. Deborah K. Chasanow**

# CONSENT DECREE

**INTRODUCTION**

1. The Equal Rights Center (the "ERC"), Lerner Enterprises, Lerner Corporation, First Alliance Properties LLC, DTC Apartments West, LLC, DTC Apartments South, LLC, and Flint Hill Development Company, LLC (together "Lerner") (the ERC and Lerner are collectively referred to as the "Parties"), have agreed to enter into this Consent Decree ("Consent Decree") in order to fully and finally resolve the claims raised by the ERC in its Complaint in this matter (the "Complaint"), including, but not limited to, the ERC's allegations that Lerner failed to design and construct certain apartment buildings in accordance with the Fair Housing Act (the "FHA"), 42 U.S.C. § 3604(f)(1), (2) & (3)(C), and failed to design and construct places of public accommodation associated with those apartment buildings in accordance with the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12183(a)(1).

2. Lerner has denied the allegations of the Complaint, and ERC recognizes that Lerner has represented that it acted in good faith and had no intention to avoid the requirements of the FHA and ADA. Nothing in this Consent Decree constitutes or may be construed as an admission of liability as to the allegations of the ERC, all of which are expressly denied by Lerner.

3. The Parties' mutual, long-term objective in entering into this Consent Decree includes the goals of increasing the total number of residential properties in the United States that are accessible to persons with disabilities, and of enhancing housing industry compliance with accessibility laws.

4. The Parties agree that this Court has jurisdiction over the subject matter of this action. The Parties further agree that the controversy should be resolved without further proceedings. Therefore, the Parties have consented to the entry of this Consent Decree as indicated by the authorized signatures appearing below. The provisions of this Consent Decree will be binding on the ERC and Lerner, their respective subsidiaries and their successors and assigns, for a period defined in paragraph H(1), below.

**It is therefore ORDERED, ADJUDGED AND DECREED that:**

**A. FAIR HOUSING PROGRAM**

1. The Parties mutually envision a long-term collaboration with regard to enhancing the housing industry compliance with accessibility laws.

2. In pursuit of their mutual objective, the Parties have agreed that Lerner will participate in the Multifamily Housing Resource Program (the "Program"), initially created by Trammell Crow Residential Company and ERC pursuant to a Consent Decree entered in Cause No. 1:07-cv-01231 in

the United States District Court for the District of Columbia, in order to provide educational and training resources to the multifamily housing industry, including companies and associations, as a means of promoting and achieving compliance with housing non-discrimination requirements for persons with disabilities under federal, state, and local laws. The Program will not be involved with advocacy activities.

3. In order to obtain access to, and the benefits of, the educational, training and consulting resources available through the Program, Lerner agrees to provide funding for the Program in the amount of $ 25,000 for the first year and $7,500 each year for nine additional years, beginning in 2012. The initial payment under this paragraph will be made via wire transfer to the ERC within 5 days of the entry of this Consent Decree, and subsequent annual payments will be made by the same means within 30 days of the anniversary of this Consent Decree. Lerner will receive those services described in this Consent Decree, as well as other services to be agreed upon by the parties, without payment of any additional compensation to the ERC.

4. The Parties agree that the purposes and activities of the Program shall continue to be those set forth in Paragraph A(2) and A(5) during the period of Lerner's participation, and both parties shall have the right to enforce this Paragraph A(4) during such period.

5. The Program will provide various services to Lerner, including but not limited to:

   a. Fair housing training provided by the ERC, at locations designated by the Lerner, with specific emphasis on compliance with the accessibility requirements of the FHA and ADA (no more than 1 per quarter)

   b. Access to the secure MHRP website, including the new e-learning facility (under production now), and all resources there

   c. ERC will review and comment on practices related to public notice of its nondiscrimination policy and nondiscrimination in advertising and will assist in implementing reasonable changes for compliance if any are necessary

   d. ERC will review the Lerner's business practices as they relate to the design and construction of multifamily housing projects and provide a written analysis and recommendations for the implementation of "best practices" to better achieve compliance with the FHA and ADA

   e. ERC will consult, at no additional charge, from time to time as reasonably requested by Lerner, on future matters relating to

accessibility design and construction standards and their applicability to specific fact situations which might arise; provided however, that the ERC shall not be asked to render legal advice.

Some of these services may be provided pursuant to a confidentiality agreement when requested by Lerner.

6. The ERC retains the right to terminate any company's participation in the Program, including Lerner's participation, on reasonable notice. If a company's participation, including Lerner's participation, is terminated by the ERC, any monetary obligation of the terminated company to the Program, including in the case of Lerner the obligation under Paragraph A(3) above, will also terminate.

7. The Parties agree that the ERC will not initiate any lawsuit or administrative action against Lerner or any "Lerner-Released Parties" (as defined in Paragraph D(2) below), even following a termination of Lerner's membership in the Program, alleging violations of the design and construction provisions of the FHA with respect to any multifamily properties in which Lerner or any Lerner-Related Party (as defined in Paragraph C.1 below) is or was involved in the design or construction process, for which a building permit was issued prior to entry of this Consent Decree or during Lerner's membership in the Program, but that the Parties will instead submit any such matter to the mutually binding arbitration in accordance with the following procedures:

   a. Any dispute, claim, or controversy arising out of or relating to this paragraph, including the determination of the scope or applicability of this paragraph, shall be determined by arbitration in Washington, D.C. before a single arbitrator. The arbitrator will be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. The decision of the arbitrator will be enforceable in any court having jurisdiction.

   b. Subject to Paragraph A(6)(c) below, each Party to the arbitration will bear its costs for preparing and participating in the arbitration, including the costs of counsel, experts, and presentation materials. The Parties to the arbitration will share equally the cost of the arbitrator's fees.

   c. At the conclusion of an arbitration proceeding, the prevailing party will receive an arbitration award including, but not limited to its costs of counsel, experts, and presentational materials as allowed by the fee-shifting provisions of the FHA, as interpreted by the various federal courts.

d. Notwithstanding this paragraph, this Consent Decree may be enforced in any court having jurisdiction should either party refuse to honor its obligations hereunder.

e. The ERC will seek to negotiate similar dispute resolution agreements with other individual company members of the Program.

8. If a third-party lawsuit or administrative action is brought against Lerner, any Lerner-Related Party, or another housing industry company which is a member and participant in the activities of the Program, the ERC will provide testimony if requested as to the activities of the Program and any affirmative actions to enhance accessibility being taken specifically by Lerner, any Lerner-Related Party or the member by its participation in the Program. The content of such testimony shall be within the discretion of ERC.

## B. EDUCATION AND TRAINING AND RELATED MATTERS

1. Within 180 days of the entry of this Consent Decree, Lerner will ensure that certain of its employees who are directly involved in the design and/or construction of covered multifamily dwellings, the identity of such employees to be agreed upon by the Parties, will attend fair housing training provided by the ERC with specific emphasis on compliance with the accessibility requirements of the FHA and ADA, and will secure a signed statement, in the form attached hereto as **Appendix 1**, from each such employee acknowledging that he/she has received this training. Additional training will be provided by the ERC as the Parties determine is desirable; however the ERC shall not be obligated to conduct such training sessions more frequently than quarterly. The costs of providing all such training (including travel expenses) will be provided by the ERC under the auspices of the Program at no additional charge to Lerner.

2. Within 180 days of the entry of this Consent Decree, the ERC will review and comment on Lerner's practices related to public notice of its nondiscrimination policy and nondiscrimination in advertising and will assist Lerner in implementing reasonable changes for compliance if any are necessary. This review and assistance will be provided by the ERC under the auspices of the Program at no additional charge to Lerner.

3. The ERC shall also provide, at no additional charge to Lerner, those review and advisory services which are set forth in other provisions of this Consent Decree.

4. The ERC shall also consult with Lerner, at no additional charge to Lerner, from time to time as reasonably requested by Lerner, on future matters relating to accessibility design and construction standards and their

applicability to specific fact situations which might arise; provided however, that the Parties agree that the ERC shall not be asked to render legal advice.

## C. CORRECTIVE ACTIONS FOR CONSENT DECREE PROPERTIES

1. Properties Subject to Consent Decree: The properties subject to the Consent Decree, which are listed on **Appendix 2** (the "Consent Decree Properties") are all of the multifamily rental properties as to which Lerner or a Lerner-Related Party (hereinafter defined) is the current owner and as to which Lerner or a Lerner-Related Party was involved in the design and construction process as an owner, developer, or contractor since March 13, 1991. The term "Lerner-Related Party" shall mean Lerner and any entity in which Lerner, directly or indirectly, holds an ownership interest excluding those entities in which Lerner owns a minority interest but did not participate in the design or construction process with respect to properties owned by such entity and excluding any entity in which Lerner has acquired an interest through the acquisition of publicly traded ownership interests.

2. Representations. Lerner represents that it has identified all Consent Decree Properties, as defined in Paragraph C(1) above, on **Appendix 2.**

3. Properties Subject to Remediation: Those Consent Decree Properties that are also listed on **Appendix 3** are referred to herein as the "Remediation Properties" and are subject to the survey, remediation, and final inspection provisions of this section. Lerner's remediation obligations are limited to multifamily apartment properties. Lerner agrees that subject to the provisions of Paragraph C.7 (b), (c) and (d), Paragraph 8 and Paragraph 1 of Appendix 5, it will inspect, and if necessary remediate, no less than 364 covered units in the Remediation Properties.

4. Initial Surveys of Remediation Properties:

   a. All Remediation Properties have been surveyed (the "Initial Survey") by a jointly agreed-upon consultant ("Consultant"). Lerner may also retain an additional consultant ("Lerner's Expert") who will be permitted to participate and interact with the Consultant in the survey, remediation and final inspection process as to any or all of the Remediation Properties as determined by Lerner.

   b. The Consultant has conducted an Initial Survey of each Remediation Property to determine the existence and scope of any deficiencies in compliance with the applicable accessibility requirements of the FHA and the ADA.

c. The Consultant has provided the Parties with a written report of each Initial Survey.

d. All expenses related to the Initial Surveys will be borne by Lerner.

5. Remediation: Lerner agrees to cause its affiliates and subsidiaries to provide certain accessibility remediation at the Remediation Properties (including the public and common use areas and individual units). The accessibility remediation is subject to the following requirements and limitations:

a. Simultaneously with the execution of this Consent Decree, the Parties will execute agreements on the alterations to be made in the three Remediation Properties ("Property Alteration Agreements") in accordance with the provisions of Paragraph C(5)(b) below. (A "form" Property Alteration Agreement is provided at **Appendix 4**.)

b. Each Property Alteration Agreement will detail the Parties' understandings regarding the alterations to the covered dwelling units and the common use and public use areas of the Remediation Property so as to bring the Property into compliance with the ADA and one or more "Safe Harbors"[1] recognized under the FHA; however the ADA and such Safe Harbors are subject to the Remediation Tolerances set forth in **Appendix 5**, and such other requirements or exceptions as may be agreed to by the Parties. Further, it is agreed that different Safe Harbors may apply at a single property.

c. Lerner will cause each Remediation Property to be altered so as to fully comply with the applicable Property Alteration Agreement. The Property Alteration Agreements are the final list of alterations to be done at the Remediation Properties and will not be later supplemented with any new alterations or requests for alterations except as may be mutually agreed upon by the Parties.

d. The Parties will endeavor in good faith to resolve informally any issues regarding the terms of Property Alteration Agreements and Lerner's compliance therewith prior to bringing the issues to the Court for resolution.

---

1 "Safe Harbor" means any of the following: a) ANSI A1117.1 (1986); the Fair Housing Accessibility Guidelines (HUD, 1991); the Fair Housing Design Manual (1998); the Guidelines and Supplemental Questions and Answers (HUD, June 28, 1994); CABO/ANSI A117.1 (1992); ICC/ANSI A1171.1 (1998); the Code Requirements for Housing Accessibility (CRHA, 2002); the International Building Code (2000, with 2001 Supplement); the International Building Code (2003); the International Building Code (2006); and b) any other Safe Harbor recognized by HUD. To the extent Lerner relies upon ANSI standards as a Safe Harbor, those standards will be read in conjunction with the Fair Housing Act, HUD's regulations, and the HUD Fair Housing Accessibility Guidelines.

6. Minimum Remediated Units: Notwithstanding the provisions of subparagraphs (b), (c) and (d) of Paragraph 7 or Paragraph 8 of this Consent Decree or the provisions of Paragraph 1 of **Appendix** 5 to this Consent Decree, Lerner will survey and remediate as necessary no fewer than 300 apartment units during the term of this Consent Decree.

7. Substitution and Multiple Credit Rights:

a. Lerner will have the right to substitute remediation of any number of covered units in the Remediation Properties with remediation of a comparable number of units in other Consent Decree Properties completed at any time prior to the entry of this Consent Decree to be in compliance with Paragraph C(4) above.

b. Lerner will receive double credit toward its Minimum Remediated Units for remediating any "affordable" units other than those in the Remediation Properties. For purposes of this section, "affordable" units are those that are "affordable" in the metropolitan statistical areas where the units are located, for families earning at or below 60% of the applicable Area Median Income under the HUD guidelines.

c. Lerner will receive double credit toward its Minimum Remediated Units for each appropriately disbursed "super accessible" unit which is not otherwise required by law and which is created by a Lerner-related party at anytime during the term of this Consent Decree. For purposes of this Paragraph (C)(7)(c), "super accessible" units are those built to comply with the ADA Standards for Accessible Design, Section 9.0, *et seq.*

d. Lerner will receive quadruple credit toward its Minimum Remediated Units for remediating and/or creating units that are both "affordable" and "super accessible," as those terms are defined herein.

8. Sale of Remediation Properties: If any Remediation Property requiring remediation is to be sold to an entity unrelated to Lerner, Lerner will ensure that at least 25% of the units per year (i.e., 365-day period) after the date of this Consent Decree have been remediated prior to the transfer of ownership of the Remediation Property, which may include unit-for-unit substitutions under Paragraph (7)(a) above being provided, and that all of the required common and public areas have been remediated or provision has been made with the buyer to allow Lerner to remediate those areas after the transfer of the property consistent with the timing provisions in Paragraph C(9) below. All units substituted under Paragraph C(7)(a), but located in a property being sold by Lerner, will be surveyed and remediated as necessary prior to the sale.

9. Time of Completion of Remediation Activities: The Parties agree to the completion of the remediation work contemplated in this Paragraph C as soon as practicable, but in no event later than the following:

a. Alterations relating to public use and common use areas will be completed within four years of the execution of this Consent Decree, provided that this period may be extended for good cause in the event that Lerner is unable to complete such Remediation Activities after reasonable good faith efforts.

b. Alterations relating to the interiors of covered dwelling units will be completed at the time of turnover of occupancy for these units or at such other time as Lerner in its discretion chooses; provided however that alterations to all such dwelling units shall be completed within four years of the execution of this Consent Decree. In allowing Lerner to have the discretion to complete the retrofits in the units over a four year period, ERC is accommodating Lerner's need to develop a detailed retrofit plan which will allow for the least disruption to the residents and on-going operation and the use of contractors in the most effective way. However, it is the parties' intention that the corrective work not be delayed any longer than is necessary. The parties intend that Lerner complete many simpler items from the PAAs as soon as possible as the maintenance staff can perform the retrofits and as apartment units turn over. Lerner agrees to complete all of the work in no more than 48 months with no extensions unless such extensions are necessitated by some acts of god outside of Lerner's control. If any work is not completed by 48 months, it will be an express breach of the Decree subject to the provisions covering either party's breach. Beginning 180 days after the effective date of the Consent Decree and continuing every 180 days until the completion of the required remediations, Lerner will provide to the ERC a report summarizing the remediation work performed during the prior 180 days and the remediation work expected to be performed during the next 180 days.

Notwithstanding the foregoing, should any tenant request alterations in his/her unit to bring the same into compliance with the design standards required by Paragraph C(4) Lerner will, in addition to completing the requested alterations as required in Paragraph C(10), within 90 days (or such greater period of time as may be reasonably necessary under the circumstances), complete the alterations called for in the applicable Property Alteration Agreement relating to all common use and public use facilities reasonably affecting that tenant's day-to-day activities.

10. Actions as to Individual Tenants:

a. Within 60 days of the date of the entry of this Consent Decree, Lerner will submit its written policies regarding reasonable accommodations and reasonable modifications to the ERC for review, comment and agreement.

b. Within 90 days after ERC and Lerner have reached agreement as to Lerner's written policy regarding reasonable accommodations and reasonable modifications, a notice of such polices will be incorporated into Lerner's form lease agreements. Thereafter a form of lease agreement containing such notice will be used in connection with the renewal of all then current tenants, as well as with all new tenants, at Consent Decree Properties owned by Lerner-Released Parties. A statement of such policy will be provided to all new tenants and renewal tenants beginning 90 days after ERC and Lerner have reached agreement as to such policy.

c. Beginning 60 days from the entry of this Consent Decree, Lerner will inform each existing and prospective tenant of a Consent Decree Property which is not a Remediation Property that a tenant who has a disability, who becomes disabled during the term of this Consent Decree, or who can demonstrate recurring visitation by persons with a disability that such tenant may, upon request, have his or her unit retrofitted to comply with the design standards required by Paragraph C(4). The alterations necessary to comply with the design standards required by Paragraph C(4) will be performed at no cost to the tenant; however any requested alternations not required by the design standards set forth in Paragraph C(4) shall be subject to Lerner's reasonable modifications policy.

d. For any unit that is modified pursuant to this Paragraph C(10) the inspection and certification requirements of Paragraph C(13) will apply.

e. If Lerner receives a written or oral request to perform any alterations from a tenant under this Paragraph C(10), Lerner will commence, and use its reasonable efforts to complete, the retrofit within 90 days from the date of the tenant's request. Lerner will create and maintain records of all requests, responses, and alterations completed under this paragraph C(10).

f. In lieu of performing the retrofits required under this Paragraph C(10), Lerner may comply with this paragraph by offering relocation of the requesting tenant to another unit within the same property ("Relocation Unit"), if:

(i) the Relocation Unit is comparable with the requesting tenant's unit in layout, features, location, and size;

(ii) the Relocation Unit is in compliance with the design standards set forth in paragraph C(4);

(iii) such relocation is provided at no cost to the requesting tenant.

11. Dislocation of Tenants: Lerner will attempt to minimize any dislocation to current and future tenants caused by the remediation work. Lerner will reimburse current or future tenants for their reasonable and necessary costs of temporary housing and for their reasonable and necessary out of pocket expenses directly caused by the remediation work.

12. No Pass-Through of Costs to Tenants: Lerner agrees that no additional rent, deposit, or other fee may be charged solely because of contemplated or completed remediation work performed at any of the Remediation Properties.

13. Inspection and Certification of Completed Remediations at Properties

a. The Consultant(s) will be retained by Lerner to conduct on-site inspections of the remediation work which has been performed at each Remediation Property to determine if such work has been completed in accord with the Property Alteration Agreement. Upon completing the remediation work at a Remediation Property, or at Lerner's sole discretion at some reasonable portion thereof (such as public and common areas), Lerner will provide notice to the ERC and the Consultant(s) (a "Completion Notice").

b. Within 21 days after a Completion Notice is sent, and upon not less than seven days notice to Lerner, if reasonably possible, the Consultant(s) will conduct the on-site inspection. Inspections will be carried out so as to minimize, to the extent possible, disruption to tenants.

c. Within 14 days following each on-site inspection, the Consultant(s) will send out the results of each inspection, if reasonably possible, including deviations in compliance with the Property Alteration Agreement, if any, in writing, and will send the report to the Parties.

d. Lerner will make a good faith effort to correct any deviations from the Property Alteration Agreement in all units requiring the same Alteration within 90 days following receipt of the report from the Consultant described in subparagraph 13.c above. All costs associated with these inspections and any corrections to remedy

deviations will be paid by Lerner. Upon final completion of the Alterations with respect to the subject Remediation Property, and certification by the Consultant that all required work has been completed, the ERC will provide Lerner with a release with respect to such Remediation Property, in the form attached hereto as **Appendix 6**.

e. If the Consultant cannot complete the inspection in the time provided, reasonable additional time will be permitted.

14. Future Compliance

Lerner, its subsidiaries and its successors and assigns, shall comply with the relevant provisions of the FHA and ADA in connection with the design and construction of their future covered multi-family housing.

## D. RELEASE

1. Remediation Properties: As to each Remediation Property, the ERC releases all claims relating to accessibility under the design and construction provisions of the FHA, the ADA, and any similar state or local accessibility law related to that Remediation Property, except for the obligations under this Consent Decree. The ERC agrees that for each Remediation Property, upon completion of remediation, final inspection and certification by the Consultant(s), the ERC releases Lerner and any other Lerner-Released Party (as defined herein), from all claims under the FHA, ADA, and any similar state or local accessibility law related to the design or construction of that Remediation Property that were brought or could have been brought as of the date of the release.

2. All Other Consent Decree Properties: As to all other Consent Decree Properties only, the ERC expressly covenants and agrees to forever refrain from instituting, maintaining, prosecuting, continuing to maintain or prosecute any suit, action or proceeding or assisting others with any suit, action or proceeding against Lerner, its subsidiaries and affiliates, and other entities or individuals which have or, in the past, had an ownership interest in the Consent Decree Property in question, or which had a role in the design or construction of that Consent Decree Property, as well as the officers, directors, managers, trustees, employees and agents of such entities or individuals, and the respective successors and assigns of all of those herein (the "Lerner-Released Parties"), alleging claims under the FHA and ADA, and any similar state or local accessibility law related to the design or construction of that Consent Decree Property, except related to changes made after the entry of this Consent Decree. For Consent Decree Properties that have been remediated pursuant to the Substitution provision of Paragraph C(7), the release provision of Paragraph D(1) shall apply.

## E. NEW RESIDENTIAL MULTIFAMILY RESIDENTIAL PROJECTS

1. For the term of this Consent Decree, Lerner will have all future multifamily residential projects designed, constructed, and/or owned by Lerner or its subsidiaries or affiliates, except for those projects in which the Lerner-related entity for the project is only acting as the General Contractor, reviewed during design and construction by a third-party fair housing and ADA consultant with knowledge and expertise in the requirements of the FHA and the ADA.

2. During the term of this Consent Decree, the ERC will review and comment on Lerner's program of third-party reviews.

## F. REPORTING

In addition to any other reporting and disclosure requirements set forth throughout this Consent Decree, within 180 days after the entry of this Consent Decree, and on the annual anniversary date of the entry of this Consent Decree until the expiration of this decree, Lerner will submit to the ERC a report containing a description of Lerner's actions in the preceding period to comply with the training, remediation, and other requirements of this Consent Decree.

## G. PAYMENT TO THE ERC

1. Lerner will make an agreed-upon monetary payment to the ERC as set forth in a side letter agreement between the Parties. The terms set forth in the side letter agreement are enforceable as terms of this Consent Decree.

## H. MISCELLANEOUS

1. Term of Decree

This Consent Decree will remain in effect for four years and, as to completion of unfinished remediation work or any work for which a longer period of time has been agreed upon, longer until such time as final certification of all remediation work contemplated hereunder is complete. Lerner's obligation for guaranteed funding and participation in the Fair Housing Program shall continue for a total of ten years, except as provided in Paragraph A(6).

2. Retained Jurisdiction to Enforce Decree

The Court will retain jurisdiction for the duration of this Consent Decree to enforce the terms of this Decree.

3. Dispute Resolution

The ERC and Lerner will each act reasonably and endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution. However, in the event of a failure by either Party to perform any act required by this Consent Decree in a timely manner or otherwise to act in accordance with any provision hereof, which is not subject to the dispute resolution process in Paragraph A(6), the other Party may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees which may have been occasioned by the violation or failure to perform.

4. Time for Performance

The time frames imposed by this Consent Decree for the performance of certain acts may be extended by the mutual written agreement of the ERC and Lerner without requirement of Court approval.

5. Notice to the Parties

Notice to the Parties may be given by facsimile (if also mailed by first-class mail), in which case notice will be deemed to have been received on the day of transmission, as follows:

If to the ERC:

Executive Director,
Equal Rights Center
Facsimile: 202-234-3106

*And*

Director, Fair Housing Project
Washington Lawyers' Committee for Civil Rights & Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
Facsimile: 202-319-1010

If to Lerner:

Jeffrey Guelcher, Esquire
2000 Tower Oaks Blvd.
Rockville, MD 20852
Facsimile: 301-692-2625

*And*

Michael W. Skojec, Esquire

Ballard Spahr LLP
300 East Lombard Street
Suite 1800
Baltimore, MD 21202-3268
Facsimile: 410-528-5650

6. Reservation of Other Claims

This Consent Decree, and any release hereunder will have no force or effect with respect to the ERC's claims as against any person or entity other than the Lerner-Released Parties, all such claims have been specifically reserved by the ERC except Lerner and Lerner-Released Parties will initially have the sole right to pursue claims against their design professionals and contractors/subcontractors who performed design or construction work at any of the Consent Decree Properties. ERC agrees not to pursue any claims arising out of the Consent Decree Properties and released properties against any of the design professionals and contractors/subcontractors unless Lerner expressly waives the right to bring any such claims.

7. Representations

Lerner represents that the Consent Decree Properties identified by Lerner pursuant to Paragraph C(1), and listed in Appendix 2, constitute all of the Consent Decree Properties that are multifamily rental properties owned by a Lerner-related entity as of January 1, 2011, and which were completed on or after March 13, 1991, including those scheduled to be completed prior to December, 31, 2011. Lerner further represents that the number of covered units listed for each Remediation Property identified in Appendix 3 is correct.

8. Titles and References

The titles and paragraph references used in this Consent Decree are non-substantive descriptions included solely for the Parties' ease of reference and will not be construed to alter the substantive provisions of this Consent Decree.

9. Counterparts

This Consent Decree may be executed in counterparts, all of which when taken together shall constitute a single instrument.

10. Integration Clause

This Consent Decree, including the appendices attached hereto, and the side letter mentioned in Paragraph G(1) constitute the entire agreement

and understanding between the Parties and supersede all prior communications or negotiations between the Parties and their representatives regarding the matters contained in this Consent Decree. Evidence of prior negotiations (including but not limited to drafts of this Consent Decree and its related documents) may not be introduced in any proceeding to enforce the terms of this Consent Decree. Except as explicitly set forth in this Consent Decree, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Consent Decree or alter its terms. This Consent Decree may be amended only by a contemporaneous or subsequent written instrument executed by all of the Parties hereto or by approval of the Court. The wording of this Consent Decree was reviewed by legal counsel for each Party, and both Parties had sufficient opportunities to propose and negotiate changes in wording prior to its execution. Neither the ERC nor Lerner will be entitled to have any wording of this Consent Decree construed against the other based on any contention as to which of the Parties drafted the language in question.

*Agreed this day,*

THE EQUAL RIGHTS CENTER

By: [signature]
Date: 9/17/11

*Attorneys for the Equal Rights Center*

LERNER ENTERPRISES;
LERNER CORPORATION;
FIRST ALLIANCE PROPERTIES LLC;
DTC APARTMENTS WEST, LLC;
DTC APARTMENTS SOUTH, LLC; and
FLINT HILL DEVELOPMENTS COMPANY, LLC

By: Michael W. Skojec, BPM
Date: 9/19/11

*Attorneys for Lerner Enterprises, Lerner Corporation, First Alliance Properties, LLC, DTC Apartments West, LLC, DTC Apartments South, LLC, and Flint Hill Developments Company, LLC*

*So ordered.*

[signature]
Judge

Date: Sept. 28, 2011